IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

VICKIE FLYNN,
Individually and for Others
Similarly Situated,

      Plaintiff,

v.

                                             Case 1:23-cv-00128-MIS-SCY

COLONIAL MANAGEMENT
GROUP, doing business as
New Season,

      Defendant.

**<u>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION AND ISSUANCE OF
COURT-AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 216(b) AND DENYING
PLAINTIFF'S MOTION TO STRIKE OR EXCLUDE DEFENDANT'S NOTICE OF
FILING SUPPLEMENTAL DECLARATIONS</u>**

      **THIS MATTER** is before the Court on Plaintiff Vickie Flynn's Motion for Conditional

Certification of a Collective Action and Issuance of Court-Authorized Notice Pursuant to 29

U.S.C. § 216(b) ("Motion for Conditional Certification"), filed July 24, 2023.  ECF No. 29.

Defendant Colonial Management Group, L.P., doing business as New Season, filed a Response on

August 7, 2023, ECF No. 30, to which Plaintiff filed a Reply on August 11, 2023, ECF No. 31.

      Also before the Court is Plaintiff's Motion to Strike or Exclude Defendant's "Notice of

Filing Supplemental Declarations" ("Motion to Strike"), filed August 16, 2023.  ECF No. 34.

Defendant filed a Response on August 20, 2023, ECF No. 35, to which Plaintiff filed a Reply on

August 21, 2023, ECF No. 36.

      Upon review of the Parties' submissions, the record, and the relevant law, the Court will

**GRANT** Plaintiff's Motion for Conditional Certification and **DENY** Plaintiff's Motion to Strike.

## I.      Background

Defendant operates more than eighty addiction treatment centers specializing in the treatment of Opioid Use Disorder.  Am. Compl., ECF No. 16 ¶ 32.  Defendant "employs patient care workers . . . to provide patient care services and treat the patients in its various facilities across the country, including in New Mexico."  Id. ¶ 33.  Defendant classifies these employees as "non-exempt" from overtime and pays them on an hourly basis.  Id. ¶ 34.

Plaintiff, a Licensed Practical Nurse ("LPN"), is one of Defendant's non-exempt employees.  Id. ¶¶ 12-13, 33.  She has worked at one of Defendant's facilities in Albuquerque, New Mexico since September 2021.  Id. ¶ 37.  Throughout her employment, Defendant has paid Plaintiff on an hourly basis, plus overtime.  Id. ¶¶ 13, 39.

On April 11, 2023, Plaintiff filed the operative Amended Complaint as a collective and class action seeking unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, 216, and the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-22(D).  Id. ¶¶ 91-110.  The Amended Complaint alleges that Defendant "requires its hourly, non-exempt employees, including [Plaintiff] and the Putative Class Members, to record their hours worked using New Season's timeclock system."  Id. ¶ 44.  The Amended Complaint alleges that Defendant "subjects its hourly, non-exempt employees, including [Plaintiff] and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods[,]" id. ¶ 45; specifically, Defendant "automatically deducts 30-minutes from [Plaintiff] and the Putative Class Members' time records each shift they work for meal periods, regardless of whether these employees actually receive a full, uninterrupted 30-minute meal period[,]" id. ¶ 46.  The Amended Complaint alleges that Defendant does not provide Plaintiff and the Putative Class Members with a bona fide lunch break because it requires

them "to remain on-duty and working throughout their shifts, continuously subjecting them to interruptions, including during their unpaid meal periods." Id. ¶¶ 47-48. Consequently, Plaintiff and the Putative Class Members work in excess of forty hours in a typical workweek, but Defendant does "not pay them 1.5 times their regular hourly rate for all overtime hours worked due to [Defendant's] failure to include time these employees worked during meal periods in their total number of hours worked in a given workweek." Id. ¶ 54. The Amended Complaint further alleges that Defendant's overtime wage violations are willful. Id. ¶¶ 57, 85.

On July 24, 2023, Plaintiff filed the instant Motion for Conditional Certification of a Collective Action. ECF No. 29. Plaintiff attached to the Motion, inter alia, the Declaration of Vickie Flynn (Plaintiff), ECF No. 29-1, and the Declarations of Sophia Harrison, ECF No. 29-2, and Fernando Sarabillo, ECF No. 29-3, who are LPNs formerly employed by Defendant. Plaintiff also filed a proposed Notice and Consent Form. ECF No. 29-7.

On August 7, 2023, Defendant filed a Response, ECF No. 30, to which it attached the Declaration of Jerry Shelton, Defendant's Director of Human Resources. ECF No. 30-1. In the Response, Defendant referenced the Declarations of three of Defendant's current employees— Valerie Arevalo, Shreya Wigh, and Darlene Mirabel—and designated those Declarations as Exhibits E, F, and G. ECF No. 30 at 8. However, Defendant failed to attach those Declarations to its Response.

On August 11, 2023, Plaintiff filed a Reply noting that Defendant failed to attach the referenced Declarations to the Response. ECF No. 31 at 6 n.2.

On August 14, 2023, Plaintiff filed a Notice of Completion of Briefing pursuant to Local Rule 7.4(e). ECF No. 32.

On August 15, 2023, Defendant filed a Notice of Filing Supplemental Declarations, ECF No. 33, to which it attached the Declarations of Darlene Mirabel, ECF No. 33-1, Shreya Wigh, ECF No. 33-2, and Valerie Arevalo, ECF No. 33-3.

On August 16, 2023, Plaintiff filed the instant Motion to Strike Defendant's "Notice of Filing Supplemental Declarations."  ECF No. 34.  Defendant filed a Response, ECF No. 35, to which Plaintiff filed a Reply, ECF No. 36.

## II.     Legal Standards

### A.     Fair Labor Standards Act

The Fair Labor Standards Act ("FLSA") requires employers to pay covered employees who work longer than forty hours in a given workweek "at a rate not less than one and one-half times the regular rate at which [the employee] is employed."  29 U.S.C. § 207(a)(1).  As the Tenth Circuit has recognized, "[t]he purpose of FLSA overtime is 'to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost.'"  Chavez v. City of Albuquerque, 630 F.3d 1300, 1304 (10th Cir. 2011) (quoting Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 460 (1948)).

Under the FLSA, an employee may bring a collective action on behalf of similarly situated employees as a remedy for violation of the FLSA.  29 U.S.C. § 216(b).  The purpose of a collective action is to lower costs for individual plaintiffs but nonetheless "vindicate rights by the pooling of resources."  Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989).  It also benefits the judicial system "by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity."  Id.  Unlike Federal Rule of Civil Procedure 23 class actions, putative collective members under the FLSA must opt into the collective rather than opting out.

Thiessen v. Gen. Elec. Cap. Corp., 267 F.3d 1095, 1102 (10th Cir. 2001); 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). To obtain these consents, after the court finds that members of the proposed collective are sufficiently similarly situated, parties may send notice of the opportunity to opt into the collective action.  See, e.g., Deakin v. Magellan Health, Inc., 328 F.R.D. 427, 431 (D.N.M. 2018).

Under the ad hoc approach endorsed—but not mandated—by the Tenth Circuit, "a court typically makes an initial 'notice stage' determination of whether plaintiffs are 'similarly situated.'"  Thiessen, 267 F.3d at 1102.  A court's initial determination "decides whether a collective action should be certified for purposes of notifying potential class members."  Bustillos v. Bd. of Cnty. Comm'rs of Hidalgo Cnty., 310 F.R.D. 631, 662-63 (D.N.M. 2015).  In this initial stage, "the court does not decide the merits of the underlying claims or resolve factual disputes."  Id. at 647.

While the plaintiff bears the burden of proving she is "similarly situated" to other potential collective members, the burden is "not great."  Id. at 663.  The plaintiff "'need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'"  Id. (quoting Schwed v. Gen. Elec. Co., 159 F.R.D. 373, 375-76 (N.D.N.Y. 1995)).  At this stage, a court "'requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'"  Thiessen, 267 F.3d at 1102 (quoting Bayles v. Am. Med. Response of Colo., Inc., 950 F. Supp. 1053, 1066 (D. Colo. 1996), modified on recon., 962 F. Supp. 1346 (D. Colo. 1997)).  "The court must determine whether the named and potential plaintiffs are 'similarly situated' based on the allegations in the complaint, which may be supported by sworn statements."

5

Deakin, 328 F.R.D. at 432; see also Landry v. Swire Oilfield Servs, L.L.C., 252 F. Supp. 3d 1079, 1114-15 (D.N.M. 2017) (stating that a plaintiff "need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist."). If the plaintiff carries her burden, the Court may conditionally certify a collective action and facilitate notice to the potential opt-in plaintiffs that this action is pending. See Hoffman-LaRoche, 493 U.S. at 172-73.

Then, after this notice and the close of discovery, a court moves to the second stage of its analysis, "using a stricter standard of 'similarly situated.'" Thiessen, 267 F.3d at 1103. The court may then reevaluate the conditional certification, usually prompted by a defendant's motion to decertify the collective. Id. During the second stage of analysis, "a court reviews several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required" before they commenced their lawsuit. Id. (internal quotation marks and citations omitted); see also Deakin, 328 F.R.D. at 432.

**B.**     **Motion to Strike**

"Under Federal Rule of Civil Procedure 12(f), a 'court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" Ysais v. N.M. Jud. Standard Comm'n, 616 F. Supp. 2d 1176, 1184 (D.N.M. 2009). See also Fed. R. Civ. P. 14(a)(4) ("Any party may move to strike the third-party claim, to sever it, or to try it separately."). "By its express language, however, rule 12(f) applies only to material contained in a 'pleading.'" Id. "The Federal Rules of Civil Procedure define 'pleadings' as a complaint or third-party complaint; an answer to a complaint, a third-party complaint, a counterclaim, or a

crossclaim; and, 'if the court orders one, a reply to an answer.'" Id. (citing Fed. R. Civ. P. 7(a)).

"Generally, therefore, motions, briefs, and memoranda may not be attacked by a motion to strike."

Id. (citing Searcy v. Soc. Sec. Admin., 956 F.2d 278, 1992 WL 43490, at *1, 4 (10th Cir. Mar. 2, 1992)).

Some courts, however, recognize an exception to this rule, finding "that a Court may 'choose to strike a filing that is not allowed by local rule, such as a surreply filed without leave of court.'" Id. (citations omitted). See also D.N.M.LR-Civ. 7.4(b) ("The filing of a surreply requires leave of the Court.").

Whether to grant or deny a motion to strike is left to the sound discretion of the district court. See In re Gold Res. Corp. Secs. Litig., 776 F.3d 1103, 1119 (10th Cir. 2015) (reviewing district court's decision on motion to strike for abuse of discretion).

### III.    Discussion

The Court will first discuss Plaintiff's Motion to Strike, and then turn to Plaintiff's Motion for Conditional Certification.

#### A.    Motion to Strike

Plaintiff argues that the Court should strike the Declarations of Darlene Mirabel, Shreya Wigh, and Valerie Arevalo because: (1) they were filed out of time and without leave of the Court, and constitute an impermissible surreply under Local Rule 7.4(b), ECF No. 34 at 2; (2) they are irrelevant and/or inadmissible, id. at 3-4; and (3) they are unreliable "happy camper" declarations, id. at 4-6. Plaintiff accuses Defendant of "gamesmanship." Id. at 2-3.

Defendant argues that the Court should deny the Motion to Strike because it is merely providing the Court with Declarations referenced in its Response brief but not attached thereto due to a "clerical error." ECF No. 35 at 1. It argues that after Plaintiff pointed out that the Declarations

were not attached to Defendant's Response brief, Defendant's Counsel contacted the Undersigned Judge's Chambers and "Counsel was notified that rather than file an amended response brief, it would be more efficient to file a notice of supplemental filing and link the notice to the Response Brief in the system." Id. at 2. Defendant further argues that there is no legal basis to strike the Declarations. Id. at 3-5. It argues that the Declarations do not constitute an impermissible surreply because they do not provide new information to the Court. Id. at 4.

In her Reply, Plaintiff argues that when Defendant learned that it had not attached the Declarations to its Response it should have contacted Plaintiff's Counsel and conferred about whether Counsel would oppose leave to file the Declarations out of time, and if an impasse was reached then Defendant could have filed a motion for leave to file the Declarations out of time. ECF No. 36 at 2. Plaintiff maintains that the Declarations should be stricken as an impermissible surreply, id. at 3-4, or as immaterial and/or irrelevant, id. at 6-7.

The Court denies the Motion to Strike because: (1) there is no legal basis for the motion to strike, and (2) Plaintiff is not prejudiced by the late filing. First, the Court finds that there is no legal basis for the Motion to Strike because the Declarations do not constitute a surreply, and therefore they were not filed in violation of Local Rule 7.4(b). A surreply gives the non-moving party an opportunity to respond to new evidence or argument raised for the first time in the movant's reply. Green v. New Mexico, 420 F.3d 1189, 1196 (10th Cir. 2005). Here, the Declarations were not responsive to new evidence or argument raised in Plaintiff's reply brief, but rather were responsive to arguments raised in Plaintiff's Motion for Conditional Certification. See ECF No. 30 at 8. Indeed, Defendant's Response brief described Arevalo, Wigh, and Mirabel's Declarations and cited them as Exhibits E, F, and G—Defendant just failed to attach the

Declarations to the brief.  Although Defendant ultimately filed the Declarations after Plaintiff filed

her Reply brief, they do not constitute a surreply.[1]

Second, even if the Court otherwise has discretion to strike the Declarations as improperly

filed, Plaintiff has not demonstrated why permitting Defendant to file the Declarations out of time

results in prejudice to Plaintiff or the Court.  To the contrary, Plaintiff argues that the Declarations

go to the merits of Plaintiff's case and are irrelevant to the conditional certification issue.  ECF

No. 34 at 3 (citing Longnecker v. Am. Express Co., No. 2:14–cv–0069–HRH, 2014 WL 4071662,

at *5 (D. Ariz. Aug. 18, 2014) (quoting Benson v. Asurion Corp., No. 3:10–cv–526, 2010 WL

4922704, at *5 (M.D. Tenn. Nov. 29, 2010)); Escobar v. Whiteside Constr. Corp., No. C 08-01120

WHA, 2008 WL 3915715, at *4 (N.D. Cal. Aug. 21, 2008)).  The Court agrees.  "In order for

conditional certification to be appropriate, [Plaintiff] need only allege that she and potential opt-

in plaintiffs were subject to a common plan, policy, or practice." Longnecker, 2014 WL 4071662,

at *4.  Although Defendants have offered the Declarations of current employees who aver that

they are not required to perform unpaid work during their lunch breaks, "all these declarations do

is raise factual disputes, which are premature because the court does not decide factual disputes

during the first stage of the certification process."  Id. (citing Thomas v. Kellogg Co., No. C13–

5136 RBL, 2014 WL 716152, at *2 (W.D. Wash. Jan. 9, 2014); Barrera v. U.S. Airways Grp., Inc.,

No. CV–2012–02278–PHX–BSB, 2013 WL 4654567, at *5 (D. Ariz. Aug. 18, 2014)).  See also

---

[1]    As a procedural matter, the Court agrees with Plaintiff that upon learning that Defendant failed to attach the Declarations to its Response brief, Defendant's Counsel should have contacted Plaintiff's Counsel to determine whether Plaintiff would object to Defendant filing the Declarations out of time; and if Plaintiff did object, then Defendant could move the Court for permission to file the Declarations out of time.

Instead, Defendant asserts that Defendant's Counsel contacted the Undersigned Judge's Chambers, and "Counsel was notified that rather than file an amended response brief, it would be more efficient to file a notice of supplemental filing and link the notice to the Response Brief in the system." ECF No. 35 at 2.  Although the members of Chambers' staff who were with Chambers on the date Defendant's Counsel claims he called are no longer with Chambers, as a general rule, Chambers staff does not give legal advice and, in the future, Counsel shall not contact Chambers for legal advice.

Nelson v. FedEx Ground Package Sys., Inc., Civil Action No. 18-cv-01378-RM-NYW, 2018 WL 6715897, at *1 n.1 (D. Colo. Dec. 21, 2018) (finding the defendant's "counter-assertions of fact as attached to the Response are not properly before the court at this stage, although those allegations may be proper to consider at a later stage of this proceeding"); Zaldivar v. JMJ Caterers, Inc., 166 F. Supp. 3d 310, 322 (E.D.N.Y. 2016) (observing that the court could not resolve factual disputes raised by the defendants in response to the plaintiff's motion for conditional certification "without evaluating the parties' credibility and engaging in a factual analysis—actions which . . . are inappropriate at this stage in the proceedings") (citations omitted); Ramirez v. Ghilotti Bros. Inc., 941 F. Supp. 2d 1197, 1203 (N.D. Cal. 2013) ("[C]ourts need not even consider evidence provided by defendants at this stage") (citation omitted); Benson, 2010 WL 4922704 at *5 ("Although the evidence submitted by the defendants tends to contradict the plaintiffs' evidence and to reveal potential weaknesses in their case, it does not preclude conditional certification."). Because the Declarations are irrelevant to the conditional certification issue, the Court will simply disregard them, but need not strike them.

For these reasons, the Motion to Strike is denied.

**B.     Motion for Conditional Certification**

Plaintiff moves for conditional certification of an FLSA collective defined in the proposed Notice and Consent Form as follows:

> All current and former hourly-paid, non-exempt patient care workers who worked for New Season in New Mexico and who received an automatic meal period deduction at any time from February 10, 2020 through **«60 days from mailing»**

ECF No. 29-7 at 2.  She argues that the Court should apply the two-step framework discussed in Thiessen v. General Electric Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001), under which the Court applies a "lenient standard" to determine whether the plaintiffs are "similarly situated" at

the initial "notice" or "conditional certification" stage—a standard that requires "'nothing more than substantial allegations that the putative [collective] members were together victims of a single decision, policy, or plan.'" Id. at 9 (quoting Thiessen, 267 F.3d at 1102).  Plaintiff argues that Defendant's automatic meal break deduction policy is illegal because it is not a bona fide meal period, id. at 10 (citing 29 C.F.R. § 785.19(a)), and that the allegations contained in the Complaint and the sworn testimony provided in the Declarations filed in support of her Motion for Conditional Certification satisfy the lenient standard, id. at 11 (citing Guarriello v. Asnani, 517 F. Supp. 3d 1164, 1173 (D.N.M. 2021); Calvillo v. Bull Rogers, Inc., 267 F. Supp. 3d 1307, 1312-13 (D.N.M. 2017); Landry v. Swire Oilfield Servs., L.L.C., 252 F. Supp. 3d 1079, 1118 (D.N.M. 2017)).  She argues that courts around the country grant conditional certification "where the employees are required to be available for work-related interruptions during their unpaid meal periods[,]" id. at 12, and cites twenty-eight cases in support, id. at 12-16 (citations omitted). Plaintiff further argues that the proposed Notice and Consent Form is appropriate.  Id. at 16. Plaintiff asks the Court to order Notice be sent by U.S. mail, email, and text message, id. at 17, order Defendants to produce to Plaintiff's Counsel a database that includes the names of all putative collective action members, id. at 18-19, require potential opt-in plaintiffs to return their signed Consent forms within sixty days, id. at 19, and permit Plaintiff to send a reminder notice to recipients who have not joined within thirty days after Notice is sent, id. at 19-20.[2]

Defendant argues that the Court should apply a "heightened standard" to the conditional certification issue and require Plaintiff to show a "strong likelihood that those employees are similarly situated to the plaintiff."  ECF No. 30 at 9-10 (citing Clark v. A&L Homecare and

---

[2]        Defendant did not respond to, and therefore apparently does not oppose, these requests.

Training Ctr., LLC, 68 F.4th 1003 (6th Cir. 2023); Swales v. KLLM Transp. Servs., L.L.C., 985 F.3d 430, 434 (5th Cir. 2021)).  It argues that Plaintiff has not established that members of the proposed collective are similarly situated because she has not identified a decision, policy, or plan of Defendant that applies to the proposed class and violates the FLSA.  Id. at 3-9.  Specifically, Defendant argues that the meal break deduction is not "automatic," but rather Defendant's timekeeping system requires employees at the end of their shift to select whether they took an uninterrupted 30-minute meal break or not; and if they indicate they did not receive an uninterrupted 30-minute meal break then the time is not deducted from their pay.  Id. at 4 (citing Flynn Decl., ECF No. 29-1 ¶ 6).  Defendant further argues that if the Court grants conditional certification, it should modify the proposed Notice and Consent Form to: include in the collective only "dosing nurses" and not all "patient care workers[,]" id. at 12; list, in a separate heading, the collective members' discovery and trial testimony obligations, id. at 13; omit "factual assertions that are suggestive, misleading, and unnecessary[,]" and specifically the assertion that Plaintiff "alleges this time should be compensated because patient care workers are not realistically able to be completely relieved of their work duties if they remain on-premises during their meal breaks due to patient care workers' ongoing ethical obligations to remain attentive and responsive to patients' needs throughout their shifts[,]" id. at 13-14; omit the instruction that putative class members "should not contact [Defendant] or it's attorneys about this lawsuit or seek advice from them[,]" because "[u]ntil the notice is signed and submitted, these putative class members are not represented by Plaintiff's counsel and, thus, any instruction not to speak to Defendant's counsel is inappropriate and misleading[,]" id. at 14.  Finally, Defendant argues that "[t]he language in the proposed email notice adds an additional sentence that advocates for Plaintiff's rights in a non-

neutral manner[,]" and the proposed email notice and text message notice should be the same.  Id. at 15.

In her Reply, Plaintiff argues that the Court should reject Defendant's invitation to deviate from the two-step framework the Tenth Circuit endorsed in Thiessen in favor of the framework espoused by the Fifth Circuit in Swales, which "virtually no court outside of the Fifth Circuit has adopted . . . ."  ECF No. 31 at 7-8 (citations omitted).  She argues that she has met the "fairly lenient" conditional certification standard endorsed in Thiessen.  Id. at 1-5.  She argues that she has plausibly alleged that Defendant's policy of automatically deducting thirty minutes from each employee's hours for a meal break violates the FLSA, even if the employee "can reverse the deduction at the end of their shifts[.]"  Id. at 3.  In this regard, she clarifies:

> What makes the deduction "automatic" is that 30-minutes are removed as an automized function of the timekeeping software, regardless of whether the worker actually takes a break or not.  The timekeeping software shifts the burden to individual workers to reverse that automatically-applied deduction.  [Defendant's] argument that such automatic time deductions are not necessarily illegal under the FLSA . . . misses the point.  Putting aside that one of [Defendant's] cites [sic] cases, Fengler, granted conditional certification under similar circumstances as this case, [Plaintiff] does not argue that the automatic 30-minute deduction standing alone warrants conditional certification.  The automatic deduction, coupled with the inherent on-duty nature of the employees' direct patient care job duties, is what renders the automatically-deducted meal periods compensable.  As recognized in Fengler and other courts, this is sufficient to grant conditional certification and issue FLSA notice.  See Dkt. 29 at 12-16 (collecting cases).
>
> [Defendant's] company-wide policy plausibly results in FLSA overtime violations because these workers are required, pursuant to their ethical obligations to their patients, to remain on-duty throughout their shifts, even during unpaid breaks.

Id. (citing Chapman v. Saber Healthcare Grp., LLC, 623 F. Supp. 3d 664, 675 (E.D. Va. 2022)).  Plaintiff further argues that the Court should reject Defendant's requested modifications to the proposed Notice and Consent Form, id. at 10-12; however, she agrees to amend the Notice to include language informing the putative collective action members that they "may be selected to

answer written questions under oath, provide documents relating to your claim, answer questions verbally under oath, and/or testify in court at trial or a hearing."  Id. at 10.

### A.   Applicability of <u>Swales</u>

Initially, the Court finds no reason to deviate from the two-step, "ad hoc" framework endorsed by the Tenth Circuit in <u>Thiessen</u> in favor of the framework espoused by the Fifth Circuit in <u>Swales</u>, which the Tenth Circuit has not endorsed.[3]  <u>See</u> <u>Spencer v. Mental Health Res., Inc.</u>, Civ. No. 1:21-cv-00121 MIS/JHR, 2022 WL 3031839, at *3 (D.N.M. Aug. 1, 2022) (Strickland, J.) (declining to adopt <u>Swales</u> framework, and instead applying "ad hoc" framework endorsed in <u>Thiessen</u>); <u>Green v. Perry's Rest. Ltd</u>, Civil Action No. 21-cv-0023-WJM-NRN, 2022 WL 16744795, at *3 n.4 (D. Colo. Nov. 7, 2022) (declining to adopt <u>Swales</u> because it "is not binding Supreme Court or Tenth Circuit authority, nor does the Court find persuasive the reasoning of that decision"); <u>Buffington v. Ovintiv USA Inc.</u>, Civil Action No. 20-cv-02477-RM-STV, 2021 WL 3021464, at *2 (D. Colo. July 16, 2021) ("The Court need not decide the merits of <u>Swales</u>' legal analysis, and whether it is viable in light of <u>Thiessen</u>, because it . . . finds no reason to deviate from <u>Thiessen</u>, even if it could do so.").

---

[3]      In <u>Swales</u>, the Fifth Circuit rejected any framework in which the court initially "conditionally certifies" a collective action.  985 F.3d at 441.  It held that instead:

> a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of "employees" is "similarly situated." And then it should authorize preliminary discovery accordingly.  The amount of discovery necessary to make that determination will vary case by case, but the initial determination must be made, and as early as possible.

Id.  After this "preliminary discovery" stage the court "consider[s] all available evidence" to determine whether Plaintiff has established that the plaintiff has met his or her burden of establishing similarity.  Id. at 443.

**B.      Conditional Certification**

Under the Thiessen framework, Plaintiff satisfies her "notice" stage burden of showing that she is similarly situated to other potential collective action members by asserting "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." Thiessen, 267 F.3d at 1102.  The Court finds that Plaintiff has satisfied her burden.

The Amended Complaint alleges that Defendant "requires its hourly, non-exempt employees, including [Plaintiff] and the Putative Class Members, to record their hours worked using New Season's timeclock system." Id. ¶ 44.  The Amended Complaint alleges that Defendant "subjects its hourly, non-exempt employees, including [Plaintiff] and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods[,]" id. ¶ 45; specifically, Defendant "automatically deducts 30-minutes from [Plaintiff] and the Putative Class Members' time records each shift they work for meal periods, regardless of whether these employees actually receive a full, uninterrupted 30-minute meal period[,]" id. ¶ 46.  It alleges that Defendant does not provide Plaintiff and the Putative Class Members with a bona fide lunch break because it requires them "to remain on-duty and working throughout their shifts, continuously subjecting them to interruptions, including during their unpaid meal periods." Id. ¶¶ 47-48.  Consequently, Plaintiff and the Putative Class Members work in excess of forty hours in a typical workweek, but Defendant does "not pay them 1.5 times their regular hourly rate for all overtime hours worked due to [Defendant's] failure to include time these employees worked during meal periods in their total number of hours worked in a given workweek." Id. ¶ 54.

Furthermore, the assertions contained in Plaintiff, Sophia Harrison, and Fernando Sarabillo's Declarations support the inference that the putative collective action members were victims of a single policy.  ECF No. 29-1, 29-2, 29-3.  Specifically, Plaintiff's Declaration states:

2.      I am currently employed by New Season at the Central New Mexico in Albuquerque, New Mexico as a dosing nurse/licensed practical nurse (LPN), and have worked at that facility since approximately September 2021. During my time working at New Season, I was classified as non-exempt and was paid on an hourly-rate basis.

3.      My job duties as a dosing nurse for New Season included providing direct patient care services, administering medications and certain medical treatments, patient monitoring, assisting doctors and other patient care workers, charting, cleaning, organizing supplies, and communicating with patients and their families. As a patient care worker, I have an ethical and moral obligation to my assigned patients throughout my shift. That obligation is fairly simple, but critically important: patient care comes first, no matter what. This means that we are required to remain attentive and responsive to our patients' needs throughout our entire shift, even during attempted meal breaks. In an opioid treatment clinic like New Season, patient care workers like me get interrupted or pulled out of our breaks unexpectedly to help patients on a regular basis. When this happens, it is not practical to ask a supervisor for pre-approval before we assist our patients.

4.      New Season did not make me or the other hourly patient care workers manually clock out for our meal breaks. Instead, New Season had a standard policy that applied to patient care workers like me of automatically deducting 30 minutes from our work time to account for an unpaid "meal break." From my experience working at New Season and my discussions with other patient care workers at New Season, the company applied this automatic deduction policy to all of the hourly-paid patient care workers, regardless of our specific job titles, supervisors, or job duties. Based on my experience working at New Season, this same automatic deduction policy applied at all of the New Season treatment facilities in New Mexico.

5.      New Season also had common timekeeping and overtime rules that applied to all of the hourly-paid patient care workers, including me, which reinforced this discouragement.

6.      For example, New Season makes all of the hourly patient care workers clock in and clock out using the same ADP timekeeping software to track our time worked. Generally speaking, most people clocked in and clocked out using this software on the on-site computer in the pharmacy. The ADP timekeeping software works together with the automatic meal break deduction policy because

16

when we clock out at the end of our shift, the software prompts us to affirm that we received a full meal break. Even though this software facially gives us an opportunity to report that we didn't receive a full meal break, our supervisors discourage us from reporting that we didn't get a full meal break when we clock out. For one thing, our supervisors told us we were only supposed to click the button noting we didn't get a break if our break was actually cut short or skipped entirely. New Season never told us we could click the "I didn't get a break" button if we were required to remain responsive to patient needs or ready to jump in and help during our meal breaks, even if it wasn't in fact interrupted or skipped. New Season's supervisors also told us not to click "I didn't get a break" too many times, or we would accrue unapproved overtime which was not allowed.

7.      New Season also has a common overtime policy, which says that non-exempt patient care workers like me are not allowed to work overtime that is unapproved. If a patient care worker like me worked unapproved overtime, we can be subject to discipline or write-ups. Even if New Season pays us for the unapproved overtime work, we could still get in trouble for breaking the "no unapproved overtime" rule. This is part of the reason why New Season's supervisors tell us not to report our missed or interrupted meal breaks, because if we report too many meal breaks it could run into overtime hours that are unapproved.

8.      Nobody at New Season informed me that I could be compensated for my meal breaks if I could be interrupted or called into work, even if I wasn't interrupted in fact. Instead, New Season only informed me that I could be compensated for a meal break if I was actually interrupted or skipped my meal break altogether. Had New Season informed me that I could be compensated for my meal breaks that were on-duty (even if not interrupted in fact), I would have requested payment for my meal breaks far more often.

9.      Our supervisors knew that I and other patient care workers were on-duty during virtually all of our meal periods because they held several meetings where they noted that workers were requesting too many payments for meal periods. Our supervisors also knew that we were required to remain on-duty during our attempted meal breaks due to our ethical responsibilities to our patients, because our supervisors trained and informed us that we had to follow our ethical requirements at all times during our shifts. Our supervisors trained and informed us that patient care came first, no matter what, which is in line with our ethical responsibilities to our patients. Despite knowing that we are required to remain attentive and responsive to our patients' needs during our unpaid breaks, our supervisors did not compensate us for our meal breaks except for the rare instances when we reported them.

10.      In general, there is simply no way to ensure that patient care workers like me receive interruption-free meal breaks. It is not practical or patient-safe. Our

ethical codes override any New Season policy, because it is our license on the line. New Mexico has its own regulations that patient care workers like RNs, LPNs, and other patient care workers have to follow, and those regulations tell us that we are not allowed to say "no" if our patient needs our help, even if it's during an attempted meal break. As a matter of practical reality, patient care workers like me have to be ready to intervene and help at all times during our shifts.

11.     New Season also makes clear that patient care should be our first priority and that we should always make ourselves available if our patients need us. Even though patient care workers try to cover each others' meal breaks when possible, we are regularly required to interrupt our breaks or, at the very least remain attentive and responsive to patient needs during our breaks, if there's an emergency, if a patient calls us, or if another patient care worker needs our help. Those type of interruptions happen often in an opioid treatment facility, nearly every day. Under the ethical code for nurses and other patient care providers like me at New Season, we are required to remain responsible for our assigned patients until either the patient's treatment is complete and they leave the facility, or until we're officially relieved by another patient care worker after our shift is over. This means that, even when another patient care worker temporarily tries to cover my shift during a break, I'm still ethically responsible for my assigned patients during that temporary "meal break coverage."

12.     Based on my experience working for New Season, my experience working with and interacting with other patient care workers at New Season, and my observation of New Season's policies and practices, all New Season patient care workers who received an automatic meal deduction are similarly situated. That is because these workers are all non-exempt, are paid by the hour, have direct patient care responsibilities, are subject to New Season's automatic time deduction policies, and have the same ethical responsibilities to New Season's patients that requires them to remain attentive and responsive to patient needs during their attempted breaks.

ECF No. 29-1 ¶¶ 2-12.  Harrison and Sarabillo's Declarations contain similar assertions regarding their time as Defendant's employees.  ECF No. 29-2 ¶¶ 2-11; ECF No. 29-3 ¶¶ 2-11.

Under nearly identical allegations, the court in <u>Gray v. Delta County Memorial Hospital District</u> found that the plaintiff had met her burden of substantially alleging that the putative collective action members were the victims of a single decision, policy, or plan, and granted conditional certification of a collective action of "non-exempt, hourly paid employees with patient care responsibilities" at the defendant hospital.  2021 WL 1329263, at *1-2, 5.  Most relevant here,

the Court found that the defendant's expectation that the employees remain "'on call' or 'on duty' to respond to needs of patients or other staff during their meal periods" was a practice that "applied across all relevant staff."  Id. at *3.  The court clarified that the "policy at issue" was not the defendant's codified meal policy but rather its "uncodified practice that pressured [the plaintiff] and others to work through their meal periods or be on call to respond to interruptions.  The declarations suggest this practice applied to all hourly patient care employees."  Id. at *4.

Since 2000, courts in at least thirty-one additional cases have found substantially similar (if not materially indistinguishable) allegations sufficient to grant conditional certification of a collective action.  Bowling v. DaVita, Inc., Civil Action No. 21-cv-03033-NYW-KLM, 2023 WL 4364140, at *1, 5-7 (D. Colo. July 6, 2023); Chapman v. Saber Healthcare Grp, LLC, 623 F. Supp. 3d 664, 670-71, 675-76, 682-83 (E.D. Va. 2022); Kurtz v. RCCH Trios Health, LLC, NO. 4:19-CV-5049-RMP, 2021 WL 6246626, at *2-3, 7 (E.D. Wash. Sept. 17, 2021); Hunter v. Legacy Health, Case No. 3:18-CV-02219-AC, 2021 WL 24553, at *1-2, 6-7, 10 (D. Or. Jan. 4, 2021); Hamid v. Chester Cnty. Hosp., Civil No. 2:19-cv-03773-JMG, 2020 WL 7384882, at *1-3 (E.D. Pa. Dec. 16, 2020); Straka v. Methodist Dallas Med. Ctr. Auxiliary, CIVIL ACTION NO. 3:16-CV-2192-B, 2018 WL 1611865, at *1, 4-5, 6-7 (N.D. Tex. Apr. 3, 2018); Ridley v. Regency Vill., Inc., Civil Action H-17-974, 2018 WL 1334813, at *1, 7-8, 10 (S.D. Tex. Mar. 15, 2018); Magpayo v. Advocate Health & Hosps. Corp., Case No. 16-cv-01176, 2018 WL 950093, at *2, 10, 16 (N.D. Ill. Feb. 20, 2018); Williams v. Bethel Springvale Nursing Home, No. 14 Civ. 9383 (NSR), 2017 WL 4046338, at *1, 4 (S.D.N.Y. Sept. 12, 2017); Galt v. Eagleville Hosp., 238 F. Supp. 3d 733, 734-37 (E.D. Pa. 2017); Myers  v. Marietta Mem'l Hosp., 201 F. Supp. 3d 884, 887-88, 895-96 (S.D. Ohio 2016); Abeldano v. HMG Park Manor of Westchase, CIVIL ACTION NO. H-16-1044, 2016 WL 5848890, at *1-3, 8-10 (S.D. Tex. Oct. 6, 2016); Miller v. ThedaCare Inc., Case No. 15–

C–506, 2016 WL 4532124, at *1-3, 8-9 (E.D. Wisc. Aug. 29, 2016); <u>French v. Midwest Health, Inc.</u>, No. 2:14–cv–2625–JAR–KMH, 2015 WL 4066748, at *1-5 (D. Kan. July 2, 2015); <u>Corcione v. Methodist Hosp.</u>, Civil Action No. G–14–160, 2014 WL 6388039, at *1-2, 4, 6-9 (S.D. Tex. Nov. 14, 2014); <u>Potoski v. Wyo. Valley Health Care Sys.</u>, Civil Action No. 3:11–cv–582, 2013 WL 6731035, at *1, 4-8 (M.D. Pa. Dec. 19, 2013); <u>Rogers v. HCA Health Servs. of Tenn., Inc.</u>, No. 3:09–cv–1173, 2013 WL 3224026, at *2-4 (M.D. Tenn. June 25, 2013); <u>Small v. Univ. Med. Ctr. of S. Nev.</u>, No. 2:13–cv–00298–APG–PAL, 2013 WL 3043454, at *1-2 (D. Nev. June 14, 2013); <u>Fosbinder-Bittorf v. SSM Health Care of Wisc., Inc.</u>, No. 11–cv–592–wmc, 2013 WL 3287634, at *1-2, 7 (W.D. Wisc. Mar. 21, 2013); <u>Bergman Kindred Healthcare, Inc.</u>, 949 F. Supp. 2d 852, 853, 856-60 (N.D. Ill. June 11, 2013); <u>Outlaw v. Secure Health L.P.</u>, No. 3:11cv602, 2012 WL 3150582, at *1, 4-5 (M.D. Pa. Aug. 2, 2012); <u>Woods v. RHA/Tenn. Grp. Homes, Inc.</u>, 803 F. Supp. 2d 789, 792-93, 796-98 (M.D. Tenn. 2011); <u>Creely v. HCR ManorCare, Inc.</u>, 789 F. Supp. 2d 819, 820-21, 829-41 (N.D. 2011); <u>Carter v. Jackson-Madison Cnty. Hosp. Dist.</u>, No. 1:10–cv–01155–JDB–egb, 2011 WL 1256625, at *1-2, 14-18 (W.D. Tenn. Mar. 31, 2011); <u>Miller v. Jackson</u>, No. 3:10–1078, 2011 WL 1060737, at *1-2, 7-8 (M.D. Tenn. Mar. 21, 2011); <u>Lindberg v. UHS of Lakeside, LLC</u>, 761 F. Supp. 2d 752, 754-55, 759-61(W.D. Tenn. Jan. 21, 2011); <u>Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.</u>, Civ. A. No. 09–CV–379, 2009 WL 1515175, at *1, 4-5 (W.D. Pa. June 1, 2009); <u>Camesi v. Univ. of Pittsburgh Med. Ctr.</u>, Civil Action No. 09–85J, 2009 WL 1361265, at *1-2, 4-5 (W.D. Pa. May 14, 2009); <u>Colozzi v. St. Joseph's Hosp. Health Ctr.</u>, 595 F. Supp. 2d 200, 203, 206-09 (N.D.N.Y. 2009); <u>Fengler v. Crouse Health Found., Inc.</u>, 595 F. Supp. 2d 189, 192, 195-97 (N.D.N.Y. 2009); <u>Camper v. Home Quality Mgmt. Inc.</u>,

200 F.R.D. 516, 517, 520-21 (D. Md. 2000).[4]   The Court finds these cases persuasive and concludes that conditional certification of a collective action is appropriate under the facts alleged. See, e.g., Gray, 2021 WL 1329263, at *5; Lindberg, 761 F. Supp. 2d at 760-61.

The Court rejects Defendant's argument that conditional certification is improper because the meal break deduction does not violate the FLSA.[5]   ECF No. 30 at 3-9.  Although "an automatic deduction for a meal break is not a per se violation of the FLSA[,] . . . an employer's expectation that employees remain on call during their meal breaks, in combination with an automatic meal break deduction policy, has been found to be sufficient to support conditional certification." Chapman, 623 F. Supp. 3d at 675 (internal citations omitted) (citing Lobo v. Sprint Safety, Inc., Case No. 4:19-CV-3934, 2020 WL 3618678, at *5 (S.D. Tex. July 2, 2020)).  So too has an auto-deduction policy "that placed the burden of correction on hourly employees[ when] Defendants were aware of, permitted, and/or demanded that employees continue to work during unpaid meal periods, and Defendants routinely ignored or discouraged the use of time adjustment forms to reverse the automatic deduction."  Lindberg, 761 F. Supp. 2d at 760-61.

Here, Plaintiff accuses Defendant of all of these.  Am. Compl. ¶ 48 ("New Season requires Flynn and the Putative Class Members to remain on-duty and working throughout their shifts,

---

[4]        Additionally, at least two courts in the Fifth Circuit applying the Swales standard have found substantial similarity under materially similar facts.  Roberts v. Baptist Healthcare Sys., LLC, Civil Action No. 1:20-CV-00092-MAC, 2022 WL 4089819, at *4-7 (E.D. Tex. Aug. 9, 2022), report and recommendation adopted, 2022 WL 4084420 (E.D. Tex. Sept. 4, 2022); Hamm v. Acadia Healthcare Co., Inc., CIVIL ACTION NO. 20-1515, 2022 WL 2713532, at *1, 3, 5 (E.D. La. July 13, 2022).

[5]        Defendant further argues that, as a factual matter, Plaintiff selected the "no lunch" option more than 61% of her shifts worked, including 48 of the last 50, ECF No. 30 at 6-7 (citing Shelton Decl. ¶ 7); Sophia Harrison selected the "no lunch" option more than 76% of the time, id. at 7 (citing Shelton Decl. ¶ 7); and Fernando Sarabillo selected the "no lunch" option approximately 30% of the time, id. (citing Shelton Decl. ¶ 7).  However, this argument raises factual disputes regarding the merits of Plaintiffs claims and the amount of damages she may be entitled to, and at the conditional certification stage, "[t]he court does not weigh the evidence, resolve factual disputes, or rule on the merits of plaintiffs' claims."  Greenstein v. Meredith Corp., 948 F. Supp. 2d 1266, 1267 (D. Kan. 2013) (citing Gieseke v. First Horizon Home Loan Corp., 408 F. Supp. 2d 1164 (D. Kan. 2006)).

continuously subjecting them to interruptions, including during their unpaid meal periods."); Flynn Decl. ¶ 6 ("The ADP timekeeping software works together with the automatic meal break deduction policy because when we clock out at the end of our shift, the software prompts us to affirm that we received a full meal break. Even though this software facially gives us an opportunity to report that we didn't receive a full meal break, our supervisors discourage us from reporting that we didn't get a full meal break when we clock out."); id. ¶ 9 ("Our supervisors knew that I and other patient care workers were on-duty during virtually all of our meal periods . . . ."); see also Harrison Decl. ¶¶ 6, 9; Sarabillo Decl. ¶¶ 6, 9).  The Court finds that these statements are sufficient to satisfy the "fairly lenient" notice-stage standard of alleging that Plaintiff and the putative collective action members are similarly situated.  Chapman, 623 F. Supp. 3d at 675; Gray, 2021 WL 1329263, at *5; Lindberg, 761 F. Supp. 2d at 761.  See also Myers, 201 F. Supp. 3d at 894-96 (granting conditional certification of collective of direct patient care employees who were subjected to a "standing practice" of being "on duty" during their meal breaks and whose meal breaks were automatically deducted from their hours worked); Corcione, 2014 WL 6388039, at *4 (same); Miller, 2016 WL 4532124, at *8 (granting conditional certification of collective of direct patient care employees who were required to be "on call" during their meal breaks but whose meal breaks were automatically deducted from their hours worked).

## C.   Notice and Consent

"Because opt-in plaintiffs must consent in writing to join a collective action, 29 U.S.C. § 216(b), counsel representing parties in FLSA actions send prospective class members notices to inform them about the lawsuit."  Felps v. Mewbourne Oil Co., Inc., 460 F. Supp. 3d 1232, 1240 (D.N.M. 2020) (citation and internal quotation marks omitted).  Employees must receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed

decisions about whether to participate." Hoffmann-LaRoche, 493 U.S. at 170. "In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." Id. at 174.

Defendant challenges Plaintiff's proposed Notice on several grounds.

### 1. Vague and Overbroad "Class" Definition

First, Defendant argues that the proposed "class" is "vague and overbroad," and should only include "dosing nurses" and not all "patient care workers." ECF No. 30 at 12. The Court disagrees. "Plaintiff[] need[s] only show that the proposed class 'suffer[s] from a single, FLSA-violating policy,' and that 'proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs.'" Myers, 201 F. Supp. 3d at 895 (quoting O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 585 (6th Cir. 2009), abrogated on other grounds by Campbell-Ewald Co. v. Gomez, 577 U.S. 153 (2016)). Here, the Amended Complaint alleges, and the Flynn, Harrison, and Sarabillo Declarations assert, that Defendant's automatic meal deduction policy applies to all hourly-paid patient care workers in its employ. Am. Compl. ¶¶ 33-36, 46-49, 63, 71; Flynn Decl. ¶¶ 4-12; Harrison Decl. ¶¶ 4-11; Sarabillo Decl. ¶¶ 4-11. Thus, for purposes of conditional certification, Plaintiff and all hourly-paid patient care workers employed by Defendant are similarly situated. See Myers, 201 F. Supp. 3d at 895 (rejecting the defendant's arguments that proposed collective definition including all direct patient care workers was too vague and varied); Gray, 2021 WL 1329263, at *5 (conditionally certifying collective of "[a]ll individuals who have worked for Delta County Memorial Hospital as non-exempt, hourly paid employees with patient care responsibilities . . . ."); Colozzi, 595 F. Supp. 2d at 202 (conditionally certifying collective of "current and former hourly employees with direct patient care responsibilities working at St.

Joseph's Hospital Health Center"); Fengler, 595 F. Supp. 2d at 191 (conditionally certifying collective of "current and former hourly employees with direct patient care responsibilities working at Crouse Hospital").  Therefore, this objection is overruled.

### 2. Potential Opt-In Plaintiffs' Discovery and Testimony Obligations

Next, Defendant argues that the Notice should include the potential opt-in plaintiffs' discovery and trial testimony obligations.  ECF No. 30 at 13.  In her Reply, Plaintiff agrees to include the following statement in the Notice:

> If you decide to join this lawsuit, you may be selected to answer written questions under oath, provide documents relating to your claim, answer questions verbally under oath, and/or testify in court at trial or a hearing. This may or may not be likely depending on your circumstances. You may withdraw your consent to join this case voluntarily at a later time, if you choose to do so.

ECF No. 31 at 10.  The Court finds this language adequately addresses Defendant's concern and permits potential collective action members to make an informed decision about whether to participate.  Plaintiff shall modify the Notice to include the proposed language.  See Knox v. John Varvatos Enters. Inc., 282 F. Supp. 3d 644, 666 (S.D.N.Y. 2017) (granting the defendant's request to include information regarding the potential opt-in plaintiffs' discovery obligations).

### 3. Appearance of Judicial Endorsement

Next, Defendant argues that the underlined portion of the following statement, which is included in the "Why Are You Getting This Notice?" Section, should be omitted:

> The individual bringing this lawsuit alleges that New Season instituted a policy of automatically removing 30 minutes from patient care workers' recorded work time to account for a meal period. She alleges this time should be compensated because patient care workers are not realistically able to be completely relieved of their work duties if they remain on-premises during their meal breaks due to patient care workers' ongoing ethical obligations to remain attentive and responsive to patients' needs throughout their shifts. She seeks unpaid overtime in the form of back wages, double damages, attorneys' fees, and litigation costs on your behalf for these

> automatically-deducted meal breaks during weeks in which you worked more than
> 40 total hours.

ECF No. 29-7 at 1.  Defendant argues that because the Notice includes the Court's name, "this factual assertion will be seen as being approved and/or supported by the Court.  These are unnecessary and specific factual allegations that a potential opt-in plaintiff would not need to determine whether the claims are applicable."  ECF No. 30 at 14.  Plaintiff argues that the statement accurately reflects Plaintiff's allegations and the inclusion of the Court's name on the Notice "does not signal judicial endorsement of [Plaintiff's] allegations."  ECF No. 31 at 11.

The Court finds that a potential opt-in plaintiff would not interpret the Court's name on the Notice as a judicial endorsement on the merits of the action.  See Pogue v. Chisolm Energy Operating, LLC, No. 2:20-cv-00580-KWR-KK, 2021 WL 5861184, at *10 (D.N.M. Dec. 10, 2021) ("The Court is 'cognizant of the need to both: (1) communicate its neutrality, and (2) convey that the notice itself is a court document,' and based on the Court's review of the proposed notice by Plaintiff, the Court concludes that 'the inclusion of a case caption achieves the latter without risking the former.'").  This is especially so considering that on the same page as the challenged language the Notice states: "The Court has not ruled which party will prevail in this Lawsuit but has ordered that this notice be sent to you to inform you of your legal rights and ability to make a claim for unpaid overtime wages."  ECF No. 29-7 at 2.  See Pogue, 2021 WL 5861184, at *10 (finding that the case caption would not be perceived as a judicial endorsement of the merits of the case in part because the Notice stated: "The Court has taken no position regarding the merits of the claims or defenses at issue").  Therefore, this objection is overruled.

### 4.  No Contact Instruction

Next, Defendant argues that the Notice should omit the instruction that potential opt-in plaintiffs "should not contact [Defendant] or it's [sic] attorneys about this lawsuit or seek advice from them on whether you should participate" because "[u]ntil the notice is signed and submitted, these putative class members are not represented by Plaintiff's counsel and, thus, any instruction not to speak to Defendant's counsel is inappropriate and misleading."  ECF No. 30 at 14.  They further argue that the instruction is not "neutral."  Id.

Plaintiff argues that Defendant failed to cite any authority supporting its request, and in any event, there is "simply nothing wrong or misleading about informing potential opt-in plaintiffs that they should contact Plaintiff's Counsel, not the employer's attorneys or the Court, if they have questions about the lawsuit."  ECF No. 31 at 11-12.

Although Defendant did not cite any authority supporting its position, the Court has found two cases supporting Defendant's position.  First, in Cohan v. Columbia Sussex Management, LLC, the proposed Notice included defendant's counsel's contact information[6] and the following instruction: "Do not contact [the defendant's] lawyers for questions about this lawsuit[.]"  No. CV 12–3203(JS)(AKT), 2013 WL 8367807, at *13 (E.D.N.Y. Sept. 19, 2013).  The court granted the defendant's request to strike the no contact instruction, noting that "[o]pt-in notices typically include the contact information for defendants' attorneys 'on the theory that defense counsel could serve as a potential source of information for recipients[,]'" id. (quoting Dias v. S & H Bondi's

---

[6]    In this case, the proposed Notice does not include Defendant's counsel's contact information, Defendant has not asked that its counsel's contact information be added to the Notice, and the Court declines to order it sua sponte.  See, e.g., Hong v. Haiku @ WP Inc., 582 F. Supp. 3d 117, 134 (S.D.N.Y. 2022) (denying the defendant's request to include the contact information for defendant's counsel because it "may result in the inadvertent disclosure of material information between opt-in plaintiffs and Defendants' counsel, which could in turn result in an ethical violation").

Dep't Store, No. 10 Civ. 7676(PGG), 2012 WL 137460, at *7 (E.D.N.Y. Jan. 18, 2012)), and finding "that the inclusion of contact information for Defendant's attorneys (which Plaintiffs proposed) makes no sense if the prohibition on contact is included[,]" id.  However, the Court "reminded [defendant's counsel] of the obligation to avoid unauthorized contact with represented parties (i.e., individuals who actually opt-in) and the notice may include language reflecting this obligation."  Id. (citing Dias, 2012 WL 137460, at *7).

Second, in Parks v. Eastwood Insurance Services, Inc., before the plaintiff sent court-authorized notice of a pending collective action to potential opt-in plaintiffs, the defendant employer notified its employees that a putative collective action under the FLSA was pending, and "advised employees they could contact Defendant's general counsel to answer any questions they might have."  235 F. Supp. 2d 1082, 1083 (C.D. Cal. 2002).  The plaintiff moved the court to prohibit the defendant from communicating with potential opt-in plaintiffs, and the court denied the motion.  Id. at 1085. After analyzing California's Rule of Professional Conduct that prohibits an attorney from contacting a party the lawyer knows to be represented by counsel, and analyzing analogous case law that generally permits a defendant's attorney to contact a prospective plaintiff during the pre-certification stage of a Rule 23 class action, the court found that "there is no prohibition against pre-'opt-in' communication with a § 216(b) potential plaintiff, unless the communication undermines or contradicts the Court's notice."  Id.

The Court agrees with this conclusion and finds that the Notice's instruction that potential opt-in plaintiffs "should not contact New Season or it's [sic] attorneys about this lawsuit or seek advice from them on whether you should participate" is improper.  Consequently, the Court orders that the instruction be modified to state the following: "If you decide to join this case, you should not contact the defendant's lawyer but instead rely on your counsel to do so."  Shangming Lu v.

Diamond Nail Salon, LLC, No. 3:19-cv-02017 (VAB), 2021 WL 2515895, at *7 (D. Conn. June 18, 2021); Benavides v. Serenity Spa NY Inc., 166 F. Supp. 3d 474, 487 (S.D.N.Y. 2016); Dias, 2012 WL 137460, at *7.   Defendant's attorneys are reminded of "the obligation to avoid unauthorized contact with represented parties (i.e., individuals who actually opt-in) . . . ."   Cohan, 2013 WL 8367807, at *13.   Rule 16-402 NMRA ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.").

### 5.   Email and Text Message Language

Finally, Defendant argues that "[t]he language in the proposed email notice adds an additional sentence that advocates for Plaintiff's rights in a non-neutral manner[,]" and the proposed email notice and text message notice should be the same.   Id. at 15.   It further argues that the email and text notices should "mention that Defendant denies the claims raised by Plaintiff."   ECF No. 30 at 15.

Plaintiff argues that the Court should deny the request because Defendant failed to identify which sentence is "additional" or why it is "non-neutral," and failed to provide proposed revisions.   ECF No. 31 at 12.   Plaintiff did not respond to Defendant's request that the notices mention that Defendant denies the claims.   See id.

Plaintiff is correct that Defendant failed to identify which sentence it seeks to excise or why it is "non-neutral."   The only real difference between the email notice and text message notice is that the email notice specifically identifies "New Season's automatic 30-minute meal break deduction policy" as the policy that allegedly resulted in unpaid overtime wages. See ECF No. 29-

7 at 6. The Court sees nothing "non-neutral" or otherwise inappropriate about the email notice, and denies Defendant's request to remove language from it.

However, because Plaintiff apparently does not oppose Defendant's request that the notices mention that Defendant denies the claims, the Court orders Plaintiff to add the following sentence to both the email and text message notices: "Defendant denies Plaintiff's claims."

### 6.  Additional Modification

The Court sua sponte finds that one modification of the proposed "class" definition is appropriate. The definition Plaintiff proposes is: "All current and former hourly-paid, non-exempt patient care workers who worked for New Season in New Mexico and who received an automatic meal period deduction at any time from February 10, 2020 through **«60 days from mailing»**[.]" EDF No. 29-7 at 2. The Court finds that "60 days from mailing" should be replaced with "the present." See, e.g., Miller, 2016 WL 4532124, at *9 (defining class, in relevant part, as "All persons who have been or are employed by [Defendant] on an hourly basis as direct patient care providers . . . at any time three years prior to the commencement of this lawsuit to the present") (emphasis added); Myers, 201 F. Supp. 3d at 897 (defining class, in relevant part, as "All of Defendants' current and former hourly employees who were responsible for direct patient care and were subject to Defendants' automatic meal deduction policy at any time during the three years prior to the granting of this motion to the present.") (emphasis added).

### IV.   Conclusion

Therefore, it is **HEREBY ORDERED** that:

1.  Plaintiff's Motion to Strike or Exclude Defendant's "Notice of Filing Supplemental Declarations," ECF No. 34, is **DENIED**;

2. Plaintiff's Motion for Conditional Certification of a Collective Action and Issuance of Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) is **GRANTED IN PART AND DENIED IN PART** consistent with this Order;

3. The Court **CONDITIONALLY CERTIFIES** the following collective:

> All current and former hourly-paid, non-exempt patient care workers who worked for New Season in New Mexico and who received an automatic meal period deduction at any time from February 10, 2020 through the present.

4. Plaintiff is authorized to give notice of this lawsuit to all potential plaintiffs. Notice shall be disseminated by U.S. Mail, e-mail, and text message. Plaintiff shall modify the proposed Notice consistent with this Order and submit a final version for the Court's approval within twenty-one (21) days of the date of this Order. Plaintiff's counsel shall confer with Defendant's counsel regarding the modifications prior to filing a motion for approval and inform the Court whether Defendant has any objections to the modifications. If not, the motion shall be filed as an agreed motion. If Defendant objects to any modifications, it shall have seven days to file a response to the motion for approval. The opt-in period will last sixty (60) days from the date the Court grants final approval of the Notice;

5. To facilitate notice to potential opt-in plaintiffs, within fourteen (14) days of the date of this Order, Defendant shall produce to Plaintiff's counsel a computer-readable database that includes the names of all putative Collective Members, along with their job titles, dates of work, work locations last-known mailing addresses, email addresses, and mobile telephone numbers; and

**6.** Plaintiff may send a reminder notice to recipients that have not yet joined the action by the 30th day of the 60-day opt-in period.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE